UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEVEN J. HAYES,<br>        Plaintiff, | :<br>:<br>: |
| v. | :     CASE NO. 3:12-cv-1697 (MPS) |
| LEO ARNONE, et al.,<br>        Defendants. | :<br>:<br>: |

<u>RULING ON PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTIVE RELIEF [Docs. ##15 , 35]</u>

The plaintiff has filed two motions seeking preliminary injunctive relief altering his conditions of confinement at Northern Correctional Institution ("Northern"). The defendants oppose the motions. For the reasons that follow, the plaintiff's motions are denied.

I.      <u>Standard of Review</u>

Interim injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis, internal quotation marks and citation omitted). Preliminary injunctive relief is designed "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam).

To obtain preliminary injunctive relief, the moving party must establish "(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of hardships tipping decidedly in favor of the moving party." *Lynch v. City of New York*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks and citation omitted), *cert. denied*, 131 S. Ct. 415

(2010). Although a showing that the plaintiff will suffer irreparable injury before a decision on the merits of the claim can be reached is insufficient, standing alone, to warrant preliminary injunctive relief, it is the most significant condition that must be demonstrated. *See Daniels v. Murphy*, 3:11cv286 (SRU), 2012 WL 5463072 (D. Conn. Nov. 8, 2012).

If a party seeks a mandatory injunction, *i.e*, an injunction that alters the status quo by commanding the defendant to perform a positive act, he must meet a higher standard. "[I]n addition to demonstrating irreparable harm, '[t]he moving party must make a clear or substantial showing of a likelihood of success' on the merits, ... a standard especially appropriate when a preliminary injunction is sought against government." *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (citations omitted). Questionable claims would not meet the likelihood of success requirement. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 340 (1999). Here, the plaintiff seeks to change the status quo by changing correctional policy. Thus, he must meet this higher standard.

Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases. *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997). Where, as here, "the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony." 7 James W. Moore, et al., *Moore's Federal Practice* ¶ 65.04[3] (2d ed. 1995). Upon review of the record, the court determines that oral testimony and argument are not necessary in this case.

II.     Analysis

In his first motion, the plaintiff seeks orders that: (1) limit his interaction with all of the defendants, (2) all interactions with staff at Northen Correctional be recorded, (3) stop staff from issuing disciplinary reports for contraband where objects have been altered or are not being used for their intended purposes, (4) his mental health treatment be transferred to Dr. Kenneth Selig, Social Worker Jennie Albert and Office of Protection and Advocacy staff member Wiley Rutledge and have the Department of Correction bear the cost of such treatment, (5) eight disciplinary reports be expunged from his record, (6) the plaintiff's mail be handled by only one staff member who has passed a United States Postal Service examination, (7) he be provided a preferred diet, and (8) he be permitted to attend professional visits without restraints.  In his second motion, the plaintiff renews his request for a special diet.  He also asks that he be allowed to retain all of the legal supplies he deems necessary, that staff refrain from reading and confiscating his legal documents, and that inmates be allowed to assist each other in preparing legal documents.

      A.      <u>Limited Interaction with Defendants and Recording Interactions with Staff</u>

The plaintiff asks the court to order that he have limited interactions with the defendants and that all of his contacts with correctional staff be recorded.  The plaintiff has provided no authority identifying a constitutionally protected right to have limited interaction with the defendants or to have his interactions with correctional staff recorded.  Research reveals no such rights.  In addition, the plaintiff presents no facts in support of these motions suggesting that he will suffer irreparable harm if these requests are not granted.   His conclusory arguments that the defendants may violate his rights are insufficient to warrant injunctive relief.  The motions for preliminary injunctive relief are denied on these grounds.

3

B.      Disciplinary Reports for Contraband

The plaintiff asks the court to order that correctional staff not issue him disciplinary report for possession of contraband when they find altered objects or objects not being used for their intended purposes. Department of Correction Administrative Directive 9.5, Section 3(F), defines contraband as: "Anything not authorized to be in an inmate's possession, used in an unauthorized or prohibited manner or altered in any way." *See* www.ct.gov/doc/LIB/doc/PDF/AD/ad0905.pdf (last visited Oct. 31, 2013). All inmates are subject to this directive and are issued disciplinary reports if contraband is found in their possession. The plaintiff has provided no evidence that he has been treated differently from any other inmate regarding possession of contraband.

In addition, the mere issuance of a disciplinary report does not violate the plaintiff's constitutional rights. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (holding that inmates do not have a constitutionally protected right to be free from false accusations). If the plaintiff receives a disciplinary report for possession of contraband, he can challenge the report at the disciplinary hearing. As the plaintiff can challenge any disciplinary report he considers improper, the court concludes that he will not suffer irreparable harm should the court decline to order that no disciplinary reports for contraband be issued to him. The plaintiff's motions for preliminary injunctive relief are denied on this ground.

C.      Mental Health Treatment

The plaintiff contends that he has not received adequate mental health care at Northern. He seeks an order that mental health staff be prohibited from treating him and that his mental health care be handled by Dr. Selig and Licensed Clinical Social Worker Albert, with any costs

paid by the Department of Correction. The defendants argue that the plaintiff has received adequate mental health care.

Prisoners at Northern have access to mental health professionals sixteen hours per day. During the overnight hours, both a medical doctor and psychiatrist are available on-call. Cells are equipped with emergency call buttons to summon immediate medical or mental health assistance. In addition, correctional staff and social workers regularly tour the housing unit with correctional staff touring every fifteen minutes and social workers daily.

While at Northern, the plaintiff has been treated by psychiatrist Dr. Gagne and psychologist Dr. Frayne. Both doctors are employed by University of Connecticut Health Center Correctional Managed Health Care Program and provide mental health care to Connecticut inmates. The mental health professionals at Northern have developed treatment plans for the plaintiff. The plans are updated periodically. Most recently, the plaintiff has been diagnosed with and treated for, anxiety disorder not otherwise specified, antisocial personality disorder, and borderline personality disorder.

Both Drs. Gagne and Frayne attempt to meet regularly with the plaintiff to discuss various issues including coping and acceptance. Although Dr. Gagne believes that non-narcotic psychotropic medications are a necessary part of the plaintiff's treatment, the plaintiff has refused all medication since May 2013. The plaintiff refuses to meet with Dr. Gagne to discuss treatment options and recommendations. The plaintiff also refuses private therapy sessions with Dr. Frayne unless his treatment plan is what the plaintiff believes is correct. For example, several years ago, the plaintiff attempted suicide. Following the attempts, the plaintiff was required to comply with the standard safety protocol in such situations, wearing a safety vest,

confinement in the medical department and eating bag meals. Because Dr. Frayne had ordered the safety protocol, the plaintiff refused to speak with him for two years.

The defendants have provided affidavits describing the plaintiff's mental health treatment and outlining the availability of mental health treatment at Northern. The plaintiff has provided no evidence, other than his own opinions, to support his contention in these motions that his mental health treatment is inadequate. The court concludes that the plaintiff has not shown that he will suffer irreparable harm if injunctive relief is not provided. The plaintiff's motions for preliminary injunctive relief are denied on this ground.

### D. Expungement of Disciplinary Reports

The plaintiff asks the court to order that eight disciplinary findings be expunged from his record. The plaintiff does not explain, and the court cannot discern, how he will suffer irreparable harm should he be required to wait until the resolution of this case to obtain this relief. Absent a showing of irreparable harm, the plaintiff's motions for preliminary injunctive relief are denied on this ground.

### E. Mail Handled by One Person

The plaintiff asks that all of his mail be handled by one person who has passed the United States Postal Service examination. In support of his motion, the plaintiff indicates that on one occasion in April 2012, an envelope containing legal papers that he intended to be delivered to another inmate was mistakenly thought to be outgoing mail and was opened and read by staff. In his declaration in support of the motion for temporary restraining order, he references generally several incidents of missing letters. *See* Doc. #15-2 at 5, ¶ 29. The plaintiff has provided no other evidence of his mail currently being mishandled by correctional mailroom personnel. The

court concludes that preliminary injunctive relief is not warranted on this ground.

    F.      Preferred Diet

The plaintiff alleges that he suffers from diverticulitis and has suffered dramatic weight loss when required to eat foods prepared with artificially flavored chicken or beef gravy. In a grievance submitted in January 2013, the plaintiff questions whether his reaction to gravy is caused by diverticulitis, food poisoning or allergies. *See* Doc. #15-1 at 34. The plaintiff states that he was on a special diet prior to his transfer to Northern Correctional Institution in 2010. In May 2013, he was placed on a high calorie diet for thirty days. This diet only increased the portions he was served; it did not remove foods prepared with gravy.

In response to the plaintiff's motions, Dr. Wright states that the plaintiff has been placed on a high calorie/high protein diet and has been gaining weight. Dr. Wright notes that, although the plaintiff must be evaluated each month to determine whether to continue the diet, the plaintiff will be continued on the diet as long as medically required.

Dr. Wright also states that the plaintiff has been given laboratory tests and examinations in response to his complaints of diverticulitis. All tests were normal. The plaintiff has presented no current medical records indicating that he suffers from diverticulitis or that diverticulitis is caused by consuming gravy. Although the plaintiff submitted an inmate request indicating that he complained of diverticulitis in March 2013 and was seen at sick call, Doc. #35 at 25, the plaintiff fails to provide a copy of any medical records showing that his self-diagnosis was confirmed by any medical staff. In light of Dr. Wright's confirmation that the plaintiff will be provided a high calorie/high fiber diet to address his weight loss as long as medically required and the absence of current medical records supporting a claim that the plaintiff is suffering from

7

diverticulitis cause by consuming gravy, the court can discern no irreparable harm that will occur should relief be denied. The plaintiff's motions for preliminary injunctive relief are denied on this ground.

### G. Professional Visits without Restraints

The plaintiff seeks an order that he be permitted to meet with his attorneys without restraints. In response, the defendants indicate that inmates confined on death row must attend all visits, social and professional, wearing leg irons and handcuffs. The plaintiff states only that the restraints impede his ability to review legal documents with his attorneys. As he retains the ability to review documents, although not as easily as without restraints, the court concludes that the plaintiff fails to demonstrate that he will suffer irreparable harm should this request be denied. The plaintiff's motions for preliminary injunctive relief are denied on this ground.

### H. Legal Supplies

The plaintiff states that, on May 7, 2013, correctional staff confiscated legal supplies including file folders, colored dividers, and highlighters that were given to him by his attorneys. He argues that he requires these items to organize legal documents.

The defendants have provided the affidavit of Captain Bryan Rae, who explains that allowing an inmate to possess stationary items that are not available in the commissary and, therefore, not available to other inmates, presents a security issue. An inmate possessing these items may be viewed as receiving special treatment by correctional staff and can use the items to barter with other inmates, a prohibited practice.

The plaintiff has no constitutionally protected right to various stationary items such as colored dividers, folders or highlighters. Using these items is not the only way to organize legal

papers or identify relevant passages. The court cannot discern how the lack of these items will cause the plaintiff to suffer irreparable harm. The plaintiff's motions are denied on this ground.

    I.    <u>Interference and Confiscation of Legal Papers</u>

The plaintiff asks the court to order that his legal papers not be read or confiscated. The plaintiff provides several examples to support his request. On July 7, 2012, thousands of legal papers were scattered around his cell during a cell search and some documents were missing and could not be replaced. In September 2012, a book titled as a legal journal was confiscated while the plaintiff was unjustly placed on behavior observation status. The plaintiff states that legal papers were confiscated on May 7, 2013, during a cell search. The legal papers included juvenile records, parts of the plaintiff's medical and master file, nine pages of handwritten notes, a trial transcript summary and forensic summary. The plaintiff stated that this was the third time his legal papers had been confiscated. *See* Doc. #35 at 37, 39. The plaintiff contends that these actions were taken as a form of harassment or retaliation.

The defendants have not addressed this claim other than to provide the affidavit of Warden Maldonado indicating that the plaintiff did not report any harassment to him. *See* Doc. #41-6 at 7, ¶ 52. The court does not condone confiscation of legal material as harassment or retaliation, and the Defendants' failure to provide any substantive response on this issue gives the Court pause. Nonetheless, the court concludes that the plaintiff has not demonstrated that he has been irreparably harmed by these actions. The plaintiff continues to be represented by counsel, and there has been no showing that the loss of legal material has prejudiced Plaintiff's ability to assist his counsel or defend his legal rights. Presumably, he received many of the documents, which appear to relate to his criminal trial, from his attorneys and can obtain replacements. With

regard to his own notes, he can recreate them. Further, the plaintiff has not sought the return of any confiscated documents in these motions. The plaintiff has identified only three occurrences in over a year. While no confiscations of legal documents should have occurred, it has not occurred with a frequency sufficient to warrant a finding that it is likely to recur or to warrant the extraordinary remedy of an injunction. Under these circumstances, the court concludes that preliminary injunctive relief is not warranted.

      J.        <u>Working with Other Inmates on Legal Matters</u>

The plaintiff asks the court to order that he be allowed to provide legal assistance to and receive assistance from other inmates. The plaintiff has no constitutional right to provide legal assistance to other inmates. *See Shaw v. Murphy*, 532 U.S. 223, 225 (2001).

To state a claim that he was denied his constitutionally protected right of access to the courts, the plaintiff must demonstrate that the defendants acted deliberately and maliciously and that he suffered an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 353 (1996). To establish an actual injury, the plaintiff must allege facts showing that the defendants took or were responsible for actions that hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts. *See Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 2002). For example, the plaintiff could demonstrate an actual injury by providing evidence "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of the deficiencies in the prison's legal assistance facilities, he could not have known." *Lewis*, 518 U.S. at 351.

The plaintiff fails to allege any facts demonstrating an actual injury in his motions for preliminary injunctive relief. The fact that the plaintiff may not be able to litigate this case as

effectively without help from other inmates does not constitute an actual injury. *See Lewis*, 518 U.S. at 355 (disclaiming any requirement that inmates be afforded sufficient resources to litigate effectively once their claims are brought before the court).

These allegations fail to support cognizable claims. The plaintiff, therefore, cannot demonstrate a likelihood of success on the merits to warrant preliminary injunctive relief on these claims.

III.  Conclusion

The plaintiff's motions for preliminary injunctive relief [**Docs. ##15, 35**] are **DENIED**.

**SO ORDERED** this 12th day of November 2013, at Hartford, Connecticut.

  /s/  
Michael P. Shea  
United States District Judge